### W. N. Cook, Tax Collector, v. The Galveston, Harrisburg & San Antonio Railway Company.

#### No. 152.

1. **Taxation — Railway Bridges.**—Railway bridges over which the road is constructed are not subjects of separate assessment (Cooley on Taxation, 385), but all roadbed, whether built on the ground or on bridges, is taxable as railway.

2. **Assessment of Taxes — Changes by Board of Equalization—Injunction.**—Where a railway company renders for taxes the number of miles of road owned by it in a county, as required by Revised Statutes, article 4678, the action of the board of equalization in deducting therefrom three-tenths of a mile (being the length of one-half of a bridge), and ordering the tax assessor to place upon the unrendered roll against the company an item of "bridge," with the amount of taxes due thereon as fixed by them, was null and void; and the invalidity of such proceedings not appearing upon the face of the assessment roll, a sale of the company's property to make the taxes was properly enjoined.

APPEAL from Maverick.    Tried below before Hon. WINCHESTER KELSO.

*J. O. Nicholson*, for appellant.—1. The action of the Commissioners Court, as a board of equalization, in taking three-tenths of a mile from the rendition made by the company, and designating it as a " bridge," and assessing its value, was not void, and worked no hardship upon the company against which they should be relieved by injunction. Rosenberg v. Weeks, 67 Texas, 587; Harrison v. Vines, 46 Texas, 23; George v. Dean, 47 Texas, 84.

2. The board of equalization properly determined that the bridge was taxable separately, and not as a part of the mileage of the road.

*Clark, Fuller & Garner*, for appellee.—The attempted assessment was invalid, null, and void. Sayles' Civ. Stats., arts. 4686, 4687; Court v. O'Connor, 65 Texas, 334; Davis v. Burnett, 72 Texas, 3; George v. Dean, 47 Texas, 84; Railway v. Randolph, 24 Texas, 332; County of Galveston v. Gas Co., 77 Texas, 514; 3 Willson's C. C., sec. 274.

NEILL, Associate Justice.—This suit was brought by appellee against appellant, as tax collector of Maverick County, to enjoin the sale of a tract of land which had been levied on and advertised for sale for certain taxes claimed to be due from appellee for the year 1890.

The petition alleged, in substance, that appellee, plaintiff below, was the owner of 29.3 miles of railway in Maverick County, which it had rendered to the assessor of taxes of Maverick County at a valuation of $6500 per mile; that after the rendition of said railway for taxes, the Commissioners Court, sitting as a board of equalization, without written notice to plaintiff, raised the valuation of 29 miles of said railway to $8000 per mile, and deducted from the 29.3 miles of railway as rendered by appellee, plaintiff below, the three-tenths of a mile of railway and had it placed on the unrendered tax roll and assessed as "bridge," and fixed its value at $50,000; that said three-tenths of a mile so assessed as "bridge" was a part of its said railway, and was included in the 29.3 miles of railway rendered for taxation; that by reason of said illegal acts of said Commissioners Court, the tax on said three-tenths of a mile of railway has been increased from the sum of $26.50 to the sum of $487.50. That plaintiff has paid to said W. N. Cooke, defendant, all State and county taxes due on all of its property in Maverick County for the year 1890, except as hereafter mentioned, and has also paid all the tax due the State and Maverick County on the 29.3 miles of its railway at said raised valuation of $8000 per mile, except the sum of $26.50, which last sum it has always been willing and offered to pay, but which said defendant has refused to accept, and has demanded said sum of $487.50 as the tax due on said three-tenths of a mile of its said railway. That it (plaintiff), by and through its proper agents, appeared before said Commissioners Court, while sitting as a board of equalization as aforesaid, and protested against the said three-tenths of a mile of its railway being placed on the unrendered tax roll and assessed as "bridge," and valued at $50,000, but said court, sitting as aforesaid, refused to correct said error. That defendant, with full knowledge of all the facts, has levied on the said tract of land for the payment of said sum of $487.50 claimed by defendant to be due for said State and county taxes as for the year 1890 on said three-tenths of a mile of said railway, and is advertising the same for sale on the 3rd

day of February, 1891; and plaintiff here now tenders said sum of $26.50 to pay all taxes due said county and State for the year 1890 on said three-tenths of a mile of railway, estimated at said raised valuation of $8000 per mile for 29.3 miles, as fixed by board of equalization. That if not prevented, defendant will sell such land for said sum of $487.50, which is illegal, except the said sum of $26.50; and if said sale is made, plaintiff will receive great and irreparable injury, etc.; praying for a writ of injunction restraining defendant from making said sale, etc., and on hearing that said injunction be made perpetual, etc. February 3, 1891, the temporary writ was granted.

Defendant's answer consists of a general and four special demurrers, and general denial and special answer.

On June 22 cause was tried by court without a jury, and resulted in judgment overruling all of said demurrers, and perpetuating the injunction restraining defendant from selling the land, and also from collecting said tax.

There is no statement of facts in the record, and we adopt the conclusions of fact found by the District Court as our own. They are as follows, to-wit:

1. The plaintiff owns in Maverick County 29.3 miles of railway, which mileage includes all its railway in said county from the entry into said county at its, the county's, north line to the center of the Rio Grande River, and includes one-half of the railway bridge across said river between Eagle Pass, in said county, and Ciudad Porfirio Diaz, Mexico.

2. Plaintiff, at the time and in the manner required by law, rendered to the assessor of taxes of Maverick County for taxation for the year 1890, all the railway owned by it in said county at a valuation of $6500 per mile, which assessment included one-half of the bridge aforesaid, the bridge being assessed as so much railway and not separately as bridge, and the assessment as rendered covering all the railway and all the bridge in Maverick County.

3. After the rendition aforesaid, the County Commissioners Court, sitting as a board of equalization, changed plaintiff's assessment from 29.3 miles of railway to 29 miles of railway, and in lieu of the three-tenths of a mile of railway deducted by them from plaintiff's assessment, ordered the assessor to put on the unrendered roll against plaintiff an item as "bridge," at a valuation of $50,000, and assessed against the same a State tax of $162.50 and a county tax of $325.50. They also raised the value of the 29 miles of railway from $6500 per mile to $8000 per mile, and adduced no proof as to the value of the item ordered by them to be assessed as "bridge;" which changed assessments were by order of said board entered on the respective rolls by the assessor.

4. At the proper time plaintiff tendered to the tax collector of Maverick County, the defendant herein, all the State and county taxes due by

it on 29.3 miles of railway at the raised valuation of $8000 per mile, which sum would have been in full of all the State and county taxes due by it had its assessment not been changed by the board of equalization from 29.3 miles of railway, and substituted in lieu of the other three-tenths of a mile of railway the item "bridge," valued at $50,000.

5. The collector accepted and plaintiff paid all taxes assessed against its 29 miles of railway, and plaintiff then and there tendered to the tax collector the sum which would have been due for State and county taxes on the remaining three-tenths of a mile of railway owned and rendered by it in its assessment at the rate of $8000 per mile, which would have been in full of all demand against it for taxes had its assessment not been changed by the board of equalization; which tender the collector refused to receive, and in lieu thereof demanded of the plaintiff the sum of $162 50 State tax and $325 county tax on the item assessed by order of the board of equalization against plaintiff on the unrendered roll as "bridge." This last sum plaintiff refusing to pay, the collector levied on certain real estate belonging to plaintiff, and advertised the same for sale to pay the taxes due on the item assessed as "bridge." Thereupon plaintiff applied for and obtained the temporary writ of injunction, and prior to the trial paid into court the full amount due for State and county taxes on the three-tenths of a mile of railway assessed by it and deducted from its assessment by the board of equalization as aforesaid.

6. That the bridge in question spans the Rio Grande between Eagle Pass, in Maverick County, Texas, and Ciudad Porfirio Diaz, in the Republic of Mexico, and that part of said bridge situated in Maverick County, Texas, is three-tenths of a mile long.

7. That plaintiff's railroad extends to the center of the Rio Grande, and includes the half of said bridge situated in the State of Texas, yet it only operates trains to its depot in Eagle Pass, about one mile northeast from said bridge, and makes no charge for passengers or freight over said bridge, and over the mile of its railroad between its Eagle Pass depot and said bridge; all passenger and freight trains from Eagle Pass depot to and from the Republic of Mexico being operated by the Mexican International Railway, a foreign corporation, with its principal office in Ciudad Porfirio Diaz, Mexico, and to whom belongs the other half of said bridge (the half in Mexico), which company (the Mexican International Railway) receives and retains all sums paid for crossing passengers and freight over said bridge, either going to or returning from Mexico, plaintiff receiving nothing for the crossing of either passengers or freight over said bridge.

8. Plaintiff's trains of all kinds go no further than Eagle Pass depot, about a mile from said bridge, and its charges for transporting passengers and freight end at its Eagle Pass depot, and from thence to Porfirio Diaz,

Mexico, a distance of about 1¼ miles, passengers and freight are conveyed in the Mexican International Railway trains to Mexico, and brought in the same trains from Mexico to plaintiff's Eagle Pass depot, which trains cross said bridge each way; and charges for transporting passengers and freight said 1¼ miles and across said bridge are demanded and collected by the Mexican International Railway, as follows: Each passenger, 15 cents; freight, per carload, 5 cents per 100 pounds; in lots less than carloads, 8 cents per 100 pounds; which charges are collected as follows: The Mexican International Railway collects all charges for freight crossing said bridge from any direction, and all fares for passengers from Mexico to Texas, and retains the same, and plaintiff has no interest in said charges. Plaintiff at Eagle Pass sells to passengers bound for Mexico tickets for transportation in the Mexican International Railway trains from Eagle Pass to Ciudad Porfirio Diaz over said bridge, and remits the money for all such sales of tickets to the Mexican International Railway, in Mexico, and receives no part thereof.

9. That the Comptroller of the State has frequently ruled that railway bridges were taxable only as railway, and not separately as bridge, and has instructed the assessor and the collector not to tax railroad bridges separately as bridges, but to include all roadbed as railway, whether the same was built on the ground or on bridges.

10. That the taxes on three-tenths of a mile of plaintiff's railway as fixed by the board of equalization amounts to $26.50, and were duly tendered to the collector, and refused by him before this suit was brought, and on the trial and before were again tendered and refused, and were paid into the register of the court.

*Conclusions of Law.*—The question, raised by the assignments of error, to be determined from the facts is, Was the board of equalization of Maverick County authorized by law in its action of changing appellee's rendition of 29.3 miles of railroad to 29 miles, and in lieu of the three-tenths mile of railroad deducted from plaintiff's rendition, ordered the assessor to put on the unrendered roll against appellee an item as "bridge" at a valuation of $50,000, and in assessing against the same a State tax of $162.50 and a county tax of $325? Before a tax can become a charge upon property, it is necessary that a list of taxables should be made by the officer to whom by law that duty is entrusted. Cool. on Tax., 351. The officer upon whom such duty is imposed by the laws of this State is the assessor of taxes, who is required to take a list of taxable property in his county and assess the value thereof in the manner specified by law. Rev. Stats., art. 4705. And in the execution of his duties he "shall  *  *  * follow the instructions which shall from time to time be prescribed by the Comptroller of the State." Rev. Stats., art. 4713. "All railroad

\* \* \* companies shall list all of their real and personal property, giving the number of miles of roadbed \* \* \* in the county where such roadbed \* \* \* is situated, at the full and true value, except," etc. Rev. Stats., art. 4678. Railroad bridges over which the road is constructed are not subject of separate assessment. Cool. on Tax., 385. The instruction of the Comptroller to assessors, "not to tax railroad bridges separately as bridges, but to include all bed as railroad, whether built on the ground or on bridges," is binding on the assessor of taxes, and the rendition by appellee of its property for taxation in accordance with the instruction was a compliance with the law. Court v. O'Connor, 65 Texas, 334.

The rendition of property for taxes by its owner and the listing of it by the assessor in compliance with the law are provisions made for the benefit and protection of the individual tax payer, and they must be complied with in order to create a lawful demand upon the citizen for his property. For it is only by means of the requirement of official action that he can be protected against arbitrary and capricious action. Cool. on Tax., 285.

It is only where property has not been rendered that it can be assessed and placed on the unrendered roll, and this must be done by the assessor. Rev. Stats., art. 4711. The law confers no authority whatever upon the board of equalization to direct property which has been rendered for taxes by the owner to be listed by the assessor as unrendered property, and such action being without warrant of law is absolutely void. Nowhere can be found in our laws a semblance of authority for such board having property which has been rendered under its proper classification by the owner taken from its proper list and assessed under another name as unrendered property.

We therefore hold that the action of the board of equalization in changing plaintiff's rendition and having its property assessed as unrendered in the manner shown by the facts in this case, was null and void; and that the invalidity of such proceedings not appearing on the face of the assessment rolls, the injunction restraining the sale under such proceedings and its perpetuation were proper.

The judgment of the District Court is affirmed.

*Affirmed.*

Delivered December 20, 1893.