## REPUBLIC INS. CO. v. HIGHLAND PARK INDEPENDENT SCHOOL DIST. OF DALLAS COUNTY.

### No. 2766.

Court of Civil Appeals of Texas. El Paso.
Jan. 26, 1933.

Rehearing Denied March 9, 1933.

628

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellant.

J. Harold Goode and Bell & Clark, all of Dallas, for appellee.

James V. Allred, Atty. Gen., and Sidney Benbow, Asst. Atty. Gen., amicus curiæ for the state.

Worsham, Rollins, Burford, Ryburn & Hincks and Allen Charlton, all of Dallas, ·amicus curiæ for Gulf Ins. Co.

HIGGINS, Justice.

This is a suit by the Highland Park Independent School District of Dallas County, Texas, against the Republic Insurance Company, a Texas fire insurance corporation, domiciled in Dallas county, to recover balances alleged to be due by said company for taxes levied against it for the years 1926 and 1927.

The parties will be designated as they were in the court below.

It was alleged the tax for 1926 amounted to $18,978, and a payment thereon of $10,523:20 was made January 31, 1927, leaving a balance of $8,454.80, due and unpaid.

For the year 1927 it was alleged the tax amounted to $12,237, upon which a payment of $4,887.90 was made January 31, 1928, leaving a balance of $7,349.10 due and unpaid.

The suit is to recover the said balances with statutory penalty, costs, and interest.

Judgment was rendered in plaintiff's favor for $10,984.23, taxes, etc., for the year 1926, and $8,675.15, taxes, etc., for the year 1927.

It was alleged plaintiff's board of trustees for the years in question levied a tax of $1 per hundred valuation against all property in the district for the benefit of the public schools within the district, and "thereafter the tax assessor of Dallas county, as the duly and legally selected and designated assessor of said District, after the defendant had failed and refused to do so, duly and legally listed, inventoried and assessed said property along with other property in said district, in the manner and at the valuation shown in said exhibits, and included same in his regular tax rolls for said years."

While it is alleged by plaintiff in its original petition that defendant failed and refused to list, inventory, and assess its property, it nevertheless appears from the evidence that defendant prepared and tendered upon the official forms a list, inventory, and assessment of its property to the tax assessor of Dallas county for each of the years in question, with certain deductions noted thereon, which it claimed it had the right to deduct from its assets as nontaxable.

With reference to the alleged failure of defendant to render its property for taxation, plaintiff, in a supplemental petition, alleged: "Plaintiff specially denies that any valid assessment at any time was tendered or offered to the assessor by the Defendant for either of said years 1926 and 1927, or that any assessment whatever was accepted from Defendant by the Assessor for either of said years or that any assessment was at any time made or equalized except the assessment herein sued on, and the Plaintiff specially alleges that after Defendant failed and refused to make a correct and legal assessment for said years, the same was made by the tax assessor, that the Defendant and its agents and representatives had full knowledge of the amount of said assessments, the items it contained, and the separate amounts of such items and knew that the tax assessor would not and did not accept, approve or execute any other assessments suggested or offered by it and that after the making and execution of said assessment by the tax assessor, it was finally and judicially approved by the duly existing Board of Equalization."

The only two issues submitted read:

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that the Tax Assessor of Dallas County prior to October 2nd, 1926, rejected as the rendition of the Defendant's property for taxation for the year 1926, the proposed rendition tendered to him for that year by the Defendant? Answer 'Yes' or 'No.'

"Special Issue No. 2.

"Do you find from a preponderance of the evidence that the Tax Assessor of Dallas County prior to October 4th, 1927, rejected as the rendition of the Defendant's property for taxation for the year 1927, the proposed rendition tendered to him for that year by the Defendant? Answer 'Yes' or 'No.'"

Both of these issues were answered in the affirmative.

It will be noted both of these issues assume a rendition was tendered by defendant for both years.

Upon the inventory sheet for the year 1926, tendered by defendant to the assessor, it listed "Assets $4,844,596." and then deducted the following items:

| | |
|---|---:|
| Premium Reserve | $1,364,364.00 |
| Conflagration Fund | 500,000.00 |
| Losses | 116,537.00 |
| Reinsurance balances due | 46,344.00 |

Other deductions were claimed, the correctness of which is not questioned by plaintiff.

The inventory tendered by defendant was kept by the assessor, and from the data therein given, and other sources, the assessor made up a new inventory and assessment. Upon this he omitted the deductions listed above, thereby increasing the value of the taxable assets of defendant in the amount of such deductions.

For 1927 the procedure was the same as in 1926, except that in the inventory made up by the assessor in 1927 he deducted the premium reserve.

Prior to and subsequent to the action of the assessor in making such inventories and assessments, defendant's agent attempted to secure from the assessor the acceptance of the inventories and assessments tendered by it, with the deductions claimed, and was unsuccessful in its efforts so to do.

The inventories and assessments made by the assessor were by him submitted to the commissioners' court, sitting as a board of equalization, and by it approved.

## Opinion.

■ An assessment, as provided by law, is an indispensable prerequisite to the validity of a tax against an individual. Cooley on Taxation (4th Ed.) 596; 37 Cyc. 987; Clegg v. State, 42 Tex. 605; Sullivan v. Bitter, 51 Tex. Civ. App. 604, 113 S. W. 193; Richardson v. State (Tex. Civ. App.) 53 S.W.(2d) 508; Cook v. Ry. Co., 5 Tex. Civ. App. 644, 24 S. W. 544.

In Federal Royalty Co. v. State (Tex. Civ. App.) 42 S.W.(2d) 670, 674, Justice Walthall, speaking for this court, said: "It is the law that all tax assessments, to be valid, must be made as provided by the statute."

And in Vance v. Town of Pleasanton (Tex. Civ. App.) 261 S. W. 457, 459, Justice Smith, in referring to what is now article 7329, Rev. St. 1925, said: "Nor can the injured property owner be cut off by statute from showing, in such suit, that the taxable value of his property has not been ascertained by the authority or in the manner provided by law, because this right also is vouchsafed to him in the Constitution, in section 1 of article 8, which provides that the taxable value of property 'shall be ascertained as may be provided by law.' It was in obedience to this provision that the Legislature provided the present method, embraced in title 22, of the Revised Statutes, for ascertaining the taxable values of property, and the constitutional guaranty follows the method thus prescribed. It is the duty of the constituted authorities to pursue that method in ascertaining the taxable value of property, and the owner may invoke these statutory provisions to defeat a suit to force him to pay taxes not ascertained as thus provided, notwithstanding a subsequent statute which would deny him such defense. We have stated rules which we think are obvious and elemental."

In the same case (277 S. W. 89, 90), Judge Bishop, of the Commission of Appeal, said: "Our Constitution also provides that 'taxation shall be equal and uniform,' and that 'all property in this state * * * shall be taxed in proportion to its value, which shall be ascertained as may be provided by law.' Article 8, § 1. In a suit to recover taxes the owner of the property assessed has the right under this provision to show in defense of the action that the taxes assessed were not 'equal and uniform'; that the value of his property was not ascertained as provided by law; and that the value assessed is in excess of its real value."

■ An assessment involves, first, the preparation of a list of the property subject to the tax; and, second, the valuation of such property in the manner prescribed by law, and by the constituted authority. 26 R. C. L. Title Taxation, § 311; 37 Cyc. 987, and footnote 84.

The defendant questions the validity of the assessment against it made by the tax assessor in the manner stated above. It contends the assessor had no right to reject the inventory and valuation tendered by it and substitute therefor his own inventory and appraisement.

There was no issue between the defendant and the assessor as to the gross value of the former's assets. For both years they estimate the gross values at the same amounts. The controversy arose over the claim of the defendant that it had the right to deduct from the value of its gross assets the items indicated above and the refusal of the assessor to allow such deductions.

The law requires the taxpayer to render his property for taxation by listing the same, making oath thereto, and delivering the same to the assessor, whose duty it is to "enter the said property on his tax rolls." Articles 7185–7189, R. S.

Article 7192 provides that if the taxpayer refuses or neglects to list his property when called upon so to do by the assessor, such assessor shall enter the name of such person in a book. Subdivision 6 of article 7206 requires the assessor to furnish the names of such persons to the board of equalization, "* * * together with the assessment of said person's property made by him through other information; and said board shall examine, equalize and correct assessments so made by the assessor, and when so revised, equalized and corrected, the same shall be approved."

Article 7193 provides: "In all cases of failure to obtain a statement of real and personal property from any cause, the assessor of taxes shall ascertain the amount and value of such property and assess the same as he believes to be the true and full value thereof; and such assessment shall be as valid and binding as if such property had been rendered by the proper owner thereof."

The quoted article has no present application, for the facts did not exist which would authorize the assessor to inventory and value defendant's property. This is true because the defendant had tendered its inventory and valuation upon the official form.

The quoted article (7193), and articles 7205 and 7218, give to the assessor the authority to list and value property not rendered by the owner and place the same upon the unrendered roll.

In the event the list tendered by a taxpayer omits property which he owns, the assessor is by these articles authorized to list and value the omitted property and place the same upon the unrendered roll.

But we know of no statute conferring upon an assessor authority to reject a list and valuation tendered by a taxpayer and substitute one of his own and place upon the rendered roll the assessment so made by him. The plaintiff seems to have recognized this, for in apparent justification of the action of the assessor it alleged the defendant had failed and refused to list, inventory, and assess its property.

The law affords a remedy for the adjustment of differences between the taxpayer and the assessor such as here arose.

Article 7185 provides that if the assessor is not satisfied with the valuation as rendered by the owner, he shall refer the same to the board of equalization for its action, and notify the person from whom he received the list that he has referred said valuation to the board.

A portion of the assessor's oath prescribed by article 7214, reads: "* * * That I will make up and attach to each assessment sheet made up and sworn to by the said property owners, their agents or representatives, a true assessment and valuation of said property, together with a memoranda of all facts which I may learn bearing upon the value of said taxable property, * * * the true value of such property; and that I will attach said memoranda and statement of facts that I may ascertain as aforesaid to the said assessment sheets of the respective property owners."

Article 7211, in substance, provides, in case of difference between the person rendering and the assessor as to the value of property listed, that the matter shall be referred to the commissioners' court, which shall hear evidence and determine the true value.

Article 7212 provides: "The boards of equalization shall have power, and it is made their official duty, to supervise the assessment of their respective counties, and, if satisfied that the valuation of any property is not in accordance with the laws of the State, to increase or diminish the same and to affix a proper valuation thereto, as provided for in the preceding article; and, when any assessor in this State shall have furnished said court with the rendition as provided for in the preceding article, it shall be the duty of such court to call before it such persons as in its judgment may know the market value or true value of such property, as the case may be, by proper process, who shall testify under oath the character, quality and quantity of such property, as well as the value thereof. Said court, after hearing the evidence, shall fix the value of such property in accordance with the evidence so introduced and as provided for in the preceding article; and their action in such case or cases shall be final."

Article 7213 provides: "If any tax assessor in this State shall fail, refuse or neglect to place upon any rendition as provided in Article 7211 of this chapter, the true value or market value in accordance with the method of fixing such value as provided for herein, or shall fail, refuse or neglect to return to the commissioners court such rendition, together with the oath of the owner or person listing such property for taxes when such oath has been made, as provided for in this chapter, or if the assessor accepts the rendition from any person rendering property for taxation without reading to such person the oath and having it signed and sworn to as provided by law, such failure, refusal or neglect shall be deemed malfeasance on the part of such officer, and shall be cause for his removal from office."

Article 7206 provides:

"Each commissioners court shall convene and sit as a board of equalization on the second Monday in May of each year, or as soon

thereafter as practicable before the first day of June, to receive all the assessment lists or books of the assessors of their counties for inspection, correction or equalization and approval.

"1. They shall cause the assessor to bring before them at such meeting all said assessment lists, books, etc., for inspection, and see that every person has rendered his property at a fair market value, and shall have power to send for persons, books and papers, swear and qualify persons, to ascertain the value of such property, and to lower or raise the value on the same.

"2. They shall have power to correct errors in assessments. * * *

"5. Whenever said board shall find it their duty to raise the assessment of any person's property, they shall order the county clerk to give the person who rendered the same written notice that they desire to raise the value of same. They shall cause the county clerk to give ten days written notice before their meeting by publication in some newspaper, but, if none is published in the county, then by posting a written or printed notice in each justice's precinct, one of which must be at the court house door."

The plain import and meaning of these statutory provisions is, that when an owner tenders to the assessor a listing and valuation of his property for taxation it is the duty of the assessor to receive the same, and in case of difference of opinion between them as to the valuations placed upon the property by the owner, the assessor's duty then is to refer the matter to the commissioners' court as a board of equalization, and the court, after notice to the owner, is to hear evidence, settle and fix the disputed valuation.

■ This is the procedure which should have been followed by the assessor and commissioners' court in the present instance, for the real difference between the assessor and defendant was as to the true value of defendant's assets. If the deductions claimed by defendant on its listing were not properly deductible, the commissioners' court had the authority to correct the defendant's listing (articles 7206 and 7218) by eliminating same and thereby increase the valuation of its taxable assets. Ferguson v. Steen (Tex. Civ. App.) 293 S. W. 318.

■ It follows the assessment in this case was not made in a lawful manner, was invalid, and the collection of a tax based thereon cannot be enforced.

What has been said disposes of all contentions of plaintiff respecting the necessity of an assessment and the validity of the ones in question, but it is further insisted by it: First, that defendant, by tendering and paying a portion of the taxes due for each of the years, thereby eliminated all defenses except that of excessive valuation, and there was neither plea nor proof of excessive valuation; second, the defense discussed is not such as is permitted by article 7329, R. S.; third, the action of the board of equalization in approving the assessment made by the assessor is final, and cannot be disturbed.

In support of its first position plaintiff cites the cases of City of Rising Star v. Dill (Tex. Civ. App.) 259 S. W. 652; Id. (Tex. Com. App.) 269 S. W. 769, and Zachry v. City of Uvalde (Tex. Civ. App.) 24 S.W.(2d) 517, 518; Id. (Tex. Com. App.) 42 S.W.(2d) 417.

In each of these cases there was a valid assessment.

In the City of Rising Star Case, the Court of Civil Appeals held that by tendering to the tax collector and also tendering in open court the amount admitted to be due, the defendant waived the ninety days' notice required by article 7687a, Vernon's Ann. Civil Statutes, 1918 Supp., as amended by Act of 1919, 36th Leg. (Vernon's Ann. Civil St. Supp. 1922, art. 7687a).

In the Zachry Case, in the opinion rendered by the Court of Civil Appeals, it was broadly stated that "appellants had, by admitting a large portion of the debt, admitted everything had been properly performed, except the equalization," but such ruling was not necessary to the decision as is apparent from the whole opinion of that court as well as the opinion of the Commission of Appeals.

Writs of error were granted in both of these cases, and the judgments of the Courts of Civil Appeals affirmed upon recommendation of the Commission of Appeals. It will be noted from the opinions of the Commission of Appeals that affirmance was based upon grounds other than the doctrine of waiver announced in the opinions of the Courts of Civil Appeals. It may be that upon the facts in those cases the doctrine of waiver was properly applied, but we think it has no application to the present facts.

■ The assessment here was not made in the manner prescribed by law; for that reason was invalid, and we do not think it should be considered that by paying the amount it admitted to be just, the defendant should be held to have waived the invalidity of the manner in which the assessment was made against the disputed items and which it claimed were deductible. By the payment made defendant waived the irregular assessment of the property which it conceded to be taxable; but its waiver extended no farther. State v. Hoffman, 109 Tex. 133, 201 S. W. 653.

■ Nor is article 7329, R. S., to be construed as precluding defendant from interposing the defense of an invalid assessment.

It was necessary for the plaintiff to plead and prove a valid assessment. Under its general denial defendant had the right to dis-

prove such allegation and rebut the evidence offered by plaintiff in support thereof.

To hold that the statute applies to a defense of such a nature would render the statute unconstitutional. Vance v. Town of Pleasanton (Tex. Civ. App.) 261 S. W. 457; Id. (Tex. Com. App.) 277 S. W. 89; Geffert v. Yorktown, etc. (Tex. Com. App.) 290 S. W. 1083; Masterson v. Town of Hedley (Tex. Civ. App.) 265 S. W. 406.

That article 7329 has no application to the defense under consideration is foreclosed against plaintiff by these cases.

■ Nor is there any merit in the contention that the action of the board of equalization in approving the assessment has any controlling effect upon the question at issue. The invalid assessment made by the assessor was not validated by the board's action in approving same. Such action is not within the scope of the authority conferred by the statutes upon commissioners' courts sitting as boards of equalization.

For want of a valid assessment, collection of taxes sued for cannot be enforced, and, the case having been fully developed, the judgment is reversed and here rendered in defendant's favor.

Reversed and rendered.

## On Rehearing.

Counsel for appellee, in their motion for rehearing, in some respects seem to misapprehend the effect of our opinion. They assume we hold that when a taxpayer omits property from the inventory tendered to the assessor, the assessment of such omitted property must be made by the board of equalization. It is further assumed we hold the taxpayer has the right to determine the taxable status of his assets, and what portion of his property shall be assessed. No such rulings have been made, and there is nothing in the opinion to support such a view.

Counsel complain of our failure to discuss some of the cases cited by them in support of the validity of the assessment here involved. They particularly rely upon Moody v. City of Galveston, 21 Tex. Civ. App. 16, 50 S. W. 481, 482; Blewett v. Richardson Independent School District (Tex. Com. App.) 240 S. W. 529; and Haynes v. State, 44 Tex. Civ. App. 492, 99 S. W. 405.

These cases were considered and not regarded as in point. For that reason it was not considered necessary to comment upon them.

We will now briefly discuss same. In the Moody Case, the taxpayer, upon the inventory tendered by him, listed "Credits, cash, office furniture, etc., $20,000." This valuation the assessor refused to accept, and listed and valued the same at $200,000, and placed the same upon the unrendered roll, and submitted the same to the board of equalization which gave the required notice to the public.

We regard the Moody Case as one where the taxpayer omitted to inventory and list a portion of his taxable property, and in such case it was the duty of the assessor to inventory same and place such omitted property upon the unrendered roll. In that case the procedure prescribed by the statutes in the case of unrendered property was observed.

Blewett v. Richardson, etc., is a case where certain taxpayers refused to render their property. The facts are not very fully stated, but it seems the assessments were made as in cases of unrendered property.

Haynes v. State was another case of unrendered property which was placed upon the unrendered roll by the assessor. It was held that the statute imposing upon the assessor, in such cases, the duty of first listing the property, is directory, and the failure to so list the same did not invalidate the assessment in the absence of a showing by the taxpayer that he suffered by the omission.

The distinguishing feature of these three cases is that they involved assessments of property which the taxpayer had omitted to render;. which property was rendered and assessed by the assessor and placed upon the unrendered roll as the law requires shall be done when property is not rendered by the taxpayer.

In the present case the assessor did not follow the procedure prescribed in such cases. He rejected the lists and inventories tendered by appellant, made lists and inventories of his own, and carried the same forward upon the rendered rolls.

In the original opinion it was held that the real difference between the assessor and the appellant was as to the true value of the latter's assets, and if the deductions claimed on the listings were not properly deductible the commissioners' court, functioning as the board of equalization, had the authority to correct defendant's listings by eliminating the deductions and thereby increase the valuation of the taxable assets. Ferguson v. Steen (Tex. Civ. App.) 293 S. W. 318, supports the view that such a correction may be made by the board of equalization.

If the true issue between the assessor and defendant was not over the proper valuation, then the case is one of failure on the part of appellant to inventory all of its taxable assets. It is then a case of assets omitted, and the assessor should have proceeded as in the case of unrendered property and placed the omitted assets upon the unrendered roll in the name of the defendant.

■ It is perhaps advisable for us here to consider more fully the right of the taxpayer to insist that the statutory provisions governing assessments against his property be sub-

stantially observed. In Cooley on Taxation (2d) pp. 352, 353, it is said:

"Necessity for Assessment. An assessment, when taxes are to be levied upon a valuation, is obviously indispensable. It is required as the first step in the proceedings against individual subjects of taxation, and is the foundation of all which follow it. Without an assessment they have no support, and are nullities. The assessment is, therefore, the most important of all the proceedings in taxation, and the provisions to insure its accomplishing its office are commonly very full and particular.

"Mandatory Requirements. The assessment being so important, the statutory provisions respecting its preparation and contents ought to be observed with particularity. They are prescribed in order to secure equality and uniformity in the contributions which are demanded for the public service, and if officers, instead of observing them, may substitute a discretion of their own, the most important security which has been devised for the protection of the citizens in tax cases might be rendered valueless."

In 26 R. C. L. p. 355, it is said: "All those provisions which are intended for the security of the citizens, for insuring an equality of taxation and to enable everyone to know with reasonable certainty for what real and personal estate he is taxed and for what all those who are liable with him are taxed are conditions precedent and if they are not observed he is not legally taxed."

Section 1, art. 8, of the Constitution of this state, provides that all property "shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

In the Vance Case ([Tex. Civ. App.] 261 S. W. 457, and [Tex. Com. App.] 277 S. W. 89), from which we quote in the main opinion, this constitutional provision is referred to, and it was held that in obedience thereto taxable values must be ascertained in the manner provided by law.

In the case at bar, if the difference between the assessor and defendant was one of valuation, then the statutory method of adjusting such difference was not observed.

On the other hand, if it is a case of property omitted by the taxpayer from his inventory, then it was unrendered property, and the statutes governing the assessment of unrendered property were not observed.

▮ The inventory for the year 1926 tendered by appellant's agent, Jalonick, was not verified by his oath, and the one for 1927 not signed by him. We attach no importance to this defect because it had nothing to do with the assessor's rejection thereof. Jalonick made every effort to secure acceptance thereof by the assessor, and he was evidently willing to sign and verify same. The assessor's refusal to accept same was due solely to the deductions which Jalonick claimed were properly deductible.

If Jalonick had refused to sign and verify the inventories it would have authorized the assessor to treat it as a refusal to render the appellant's property and to assess the same as unrendered property, as was done in the Moody Case, supra.

▮ In its motion appellee presents the point that no costs should be taxed against it, and we think this is well taken. Articles 7337, 7343, 7333 and 7297, R. S.; Duclos v. Harris County (Tex. Com. App.) 298 S. W. 417; Grant v. Ellis (Tex. Com. App.) 50 S. W.(2d) 1093.

The motion for rehearing is overruled. No costs will be taxed against the appellee, but it is ordered, in behalf of the court officers, that all costs incurred by appellant in the court below and upon appeal be taxed and adjudged against it. Articles 2051–2052, R. S.