

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

July 24, 1963

Honorable C. W. Talbot
County Attorney
Bastrop County
Bastrop, Texas

Dear Sir:

Opinion No. C-111

Re: What is the responsibility
and duty of the Commissioners'
Court sitting as an Equaliza-
tion Board in those cases
where the Tax Assessor fails
to cause taxpayers to list and
value their properties and
sign and swear to same, and
related questions.

This is in answer to your request for our opinion dated
July 5, 1963, in which you ask a number of questions and in con-
nection therewith have submitted to us the following facts, to
wit:

"(1) About May of each year, presumably
in compliance with Article 7206, V.A.C.S.,
the Tax Assessor delivers to the equaliza-
tion board for its approval or correction
his inventory sheets for the current year,
upon which he has listed items of real estate
showing Abstract number, Survey, Acreage and
previous year's values. On many sheets Per-
sonal property thereon is shown as 'Same'
with a total valuation only. Such inventory
sheets are not dated and personal property
is not itemized either separately or grouped.
Such inventory sheets show no valuations on
any property for the current year. A copy
of an inventory sheet is hereto attached,
marked 'EXHIBIT A', showing a substantial
example for the information received by
the board, and about 50 per cent, of the
inventory sheets received by the board are
comparable to the attached copy.

"(2) Approximately 38 per centum of the
inventory sheets so delivered to the board
are signed by property owners while about
62 per centum are not signed. Upon those

inventories signed by the taxpayers there is not any valuation shown for the current year, and the jurats thereto are incomplete, being neither dated or signed by the Tax Assessor or other person authorized to administer oaths.

"(3) The inventories as furnished to the board are not separated and include both the signed and the unsigned sheets. No assessment is shown by the Tax Assessor on unrendered property and no unrendered list is furnished the board. In most all instances the previous year's assessment is brought forward from year to year without renditions or assessments.

"(4) In all instances where a taxpayer has not rendered his property for the current year and did not sign the inventory sheet, or take the oath, the homestead properties of the taxpayer are marked H. S. and are so carried forward from year to year.

"(5) Our assessed valuation for the county now stands at approximately 14½ million. It is argued that if such assessed valuation is increased to 15 million or over, the county will be required to employ a full time county auditor. The population of the county is 16,925."

In connection with the above facts you submit the following questions:

"(1) What is the responsibility and duty of the Equalization Board in those cases where the Tax Assessor fails to cause Tax Payers to list and value their properties and sign and swear to same?

"(2) What is the responsibility and duty of the Equalization Board where the Tax Assessor fails to value and assess in those cases where no rendition has been made by the Tax Payers, or where Tax Payers have under-valued their properties or otherwise erred in their assessments?

"(3) In the County as a whole, what percentage of Tax Payers rendering their properties would constitute a reasonable overall rendition for the County?

"(4) Should the Tax Assessor be required to itemize or list personal properties according to class on the inventory sheets and show values of each class?

"(5) Can homestead exemptions be allowed by the Tax Assessor or Equalization Board in those cases where the Tax Payers have not rendered their properties and have thereby failed to claim exemptions?

"(5a) If answer to Question 5 is 'Yes' then- Is the Equalization Board required to call in Tax Payers and/or witnesses in each such case and determine if each such Tax Payer is entitled to exemption, and if so, what and its value?

"(6) If total assessed valuation in County of 16,925 population is $15,000,000.00, or more, is such County required to employ a full time County Auditor?

"(7) Can Equalization Board cause and enforce the presence of the County Tax Assessor at its meetings as a witness or expert tax adviser?"

Questions numbered (1) and (2) will be answered together as they both pertain to duties of the Board of Equalization.

It is the responsibility and duty of the Equalization Board to equalize the tax assessments, see that every person's property is assessed at a fair market value, correct errors and in general do the things provided in Article 7206, Vernon's Civil Statutes. It may be that the property owners refused or neglected to list or value their properties or to sign and swear to them; and in that event, Articles 7192 and 7193, V.C.S., provide the duty of the assessor.

In the event the rolls or books of the assessor prove to be imperfect or erroneous such as failing to list the personal property or place a value on it and the value of the real estate for the current year, then Article 7225, V.C.S., provides that the Commissioners' Court shall have the same corrected or perfected,

Honorable C. W. Talbot, Page 4 (No. C-111)


either by the assessor or some other person than the assessor of taxes.

In <u>Harris County v. Bassett</u>, 139 S.W.2d 180 (Tex.Civ. App. 1940, error ref.) the court after quoting from Articles 7206, 7225 and 2351, Vernon's Civil Statutes, had the following to say:

> "While it is evident from above articles of the Revised Statutes that the Commissioners' Court had the authority to conduct a hearing for the purpose of equalizing and correcting the assessments made by the Tax Assessor and Collector, and that it had the authority for that purpose to require that Sam Bassett produce his books and records, the authorities are uniform in holding that the Board of Equalization is concerned only with the properties on the rolls and with the correction of the valuations placed thereon by the Tax Assessor, and that the board may not add to the rolls property not entered, nor eliminate therefrom entries appearing thereon. . . .

> "It is further held that the powers of the Board of Equalization to correct errors in assessments extends to the correction of an erroneous designation by the owner, to the description of the property, and to valuations placed on the rolls by the assessor without authority, and that the adding to or eliminating therefrom property appearing on the rolls is not the correction of an error within the purview of R.S. Article 7206, and is invalid if done without the taxpayer's consent. . . ."

In answer to your Question No. (3), we refer you to Articles 7189, 7190, 7191, 7192 and 7193, V.C.S.

The law makes it the duty of the tax assessor to assess all of the taxable property within the county and provides that in the event the taxpayers do not render their property, then the tax assessor shall assess the property and put it on the unrendered tax rolls.

It is the duty of the tax assessor to endeavor to secure the rendition of taxable property by the owners thereof and if

-550-

they refuse to render their property or cannot be found, then the statutes provide a method for assessing the property.

We are unable to say that any particular percentage of taxpayers rendering their properties would constitute an overall rendition for the county because the statutes clearly point out the methods of assessing the taxable property all of which should be assessed; and, therefore, we see no basis for this question.

In answer to Question No. (4), we are of the opinion that the tax assessor should be required to itemize or list personal properties on the inventory sheets and show values thereof as provided by Article 7204, V.C.S.

In the case of Sullivan v. Bitter, 113 S.W. 193 (Tex. Civ.App. 1908) the court said at page 195:

> ". . . The authority to assess property, save in exceptional cases, is vested in the assessor of taxes of the several counties of the state, and the method of making such assessments is plainly pointed out by statute. See title 104, c. 3, Rev. St. 1895. 'An assessment of necessity involves at least two things, to wit, a listing of the property to be taxed in some form, and an estimation of the sums which are to be a guide in the apportionment of the tax.'
> . . ."

See also Republic Ins. Co. v. Highland Park Ind. School Dist. of Dallas County, 57 S.W.2d 627 (Tex.Civ.App. 1933, error ref.)

In answering Question No. (5), we quote Article 7210, V.C.S., as follows:

> "Tax assessors in the execution of their duties shall use the forms and follow the instructions which the Comptroller shall from time to time prescribe, and furnished to them by the county judge in pursuance of law."

The State Comptroller of Public Accounts has issued rulings and provided forms for the rendering and assessing of taxes. These rules and forms require that a person claiming a homestead exemption for tax purposes must make an affidavit

declaring certain property to be his homestead, which declaration must be done each year in order that the homestead exemption may be placed on the tax rolls.

If the property is not rendered by the taxpayer and the assessment is made by the tax assessor, such property should be placed on the unrendered tax rolls, and there is no place provided on the unrendered tax rolls for homestead exemptions. The homestead exemption should not be carried from year to year on the assessment rolls in cases where the property owner has not rendered his property.

In this connection we are attaching hereto a copy of Attorney General's Opinion No. O-6842 formerly rendered by this department.

Question No. (6) has to do with the appointment of the county auditor in certain cases.

Attorney General Opinions No. O-4828 and No. WW-1142, copies of which are attached hereto, both provide that it is mandatory that a county auditor be appointed in the event the taxable valuation of the county is $15,000,000.00 or over according to the last approved tax rolls. These opinions cite authorities for the holding and we believe will satisfactorily answer this question.

You ask to be advised by Question No. (7) as to whether or not the Board of Equalization may enforce the presence of the county tax assessor at its meetings as a witness or expert tax advisor.

Article 7206, Section 1, V.C.S., provides as follows:

> "1. They ⌐Board of Equalization ⌐ shall cause the assessor to bring before them at such meeting all said assessment lists, books, etc., for inspection, and see that every person has rendered his property at a fair market value, and shall have power to send for persons, books and papers, swear and qualify persons, to ascertain the value of such property, and to lower or raise the value on the same." (Emphasis added.)

The following quotation is taken from Article 7212, V.C.S.:

> ". . . it shall be the duty of such
> Court /¯Board of Equalization¯7 to call
> before it such persons as in its judgment
> may know the market value or true value
> of such property, as the case may be, by
> proper process, who shall testify under
> oath the character, quality, and quantity
> of such property, as well as the value
> thereof. . . ."

Both of these Articles authorize the Commissioners' Court sitting as a Board of Equalization to require the presence of persons as witnesses and under this authority, the tax assessor could be required to be present as a witness. In addition to these specific authorities for requiring the presence of the tax assessor, it is the duty of the tax assessor to present his rolls, inventories and such information as he may possess in connection with the assessment of property for taxes.

In the case of Electra Independent School District v. W. T. Waggoner Estate, 140 Tex. 483, 168 S.W.2d 645 (1943), the Court said at page 650:

> ". . . It is no answer to say that the
> Waggoner estate failed to give the neces-
> sary information to the Board of Equaliza-
> tion to enable the Board to exercise its
> duty for under statutory authority, Arti-
> cle 7212, the Board has power to call wit-
> nesses and require them to testify under
> oath as to 'the character, quality and
> quantity of such property, as well as the
> value thereof.'"

You are advised that in our opinion the Board of Equalization has the authority to require the tax assessor to be present at the meetings of the Board of Equalization as a witness.

## SUMMARY

It is the duty of the Commissioners' Court sitting as a Board of Equalization to see that tax values are equalized, to correct errors, etc. All taxable property in the county should be assessed and placed on either the rendered or unrendered tax rolls by the tax assessor, and all property should be itemized and listed on inventory sheets.

Homestead exemptions must be claimed each year and should not be carried forward from year to year on the unrendered rolls. It is mandatory that a county auditor be appointed in counties having a tax valuation of $15,000,000.00 or over according to the last approved tax rolls. The tax assessor may be required to attend meetings of the Equalization Board as a witness.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By: J. H. Broadhurst
Assistant Attorney General

JHB:pw

Attachments

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman
J. S. Bracewell
Bill Allen
Edward R. Moffett
Allo B. Crow, Jr.

APPROVED FOR THE ATTORNEY GENERAL
BY: Stanton Stone