Mrs. Irene NELSON et al., Appellants,

v.

**BLANCO INDEPENDENT SCHOOL DISTRICT et al., Appellees.**

No. 11280.

Court of Civil Appeals of Texas.

Austin.

March 24, 1965.

Rehearing Denied April 14, 1965.

Moursund & Ferguson, Johnson City, for appellants.

Cofer, Cofer & Hearne, K. Mack Kidd, Austin, for appellees.

HUGHES, Justice.

This suit was instituted about June 25, 1964, by Mrs. Irene Nelson, C. M. Johnson, Clyde Moore and some other eighty or more residents or property taxpayers of the Blanco Independent School District, an incorporated school district of Blanco County, Texas, against such district and against the members of the Board of Trustees of such district and against named individuals "who claim and assert themselves to be a Board of Equalization" of such district and against one W. W. Hall and against Joy Brussel, assessor-collector of taxes for such district, the purpose of such suit being to have declared invalid all tax proceedings by or on behalf of such district for the year 1964 which are inconsistent with the tax renditions made by plaintiffs to the county tax assessors-collectors in Hays, Kendall and Blanco Counties, portions of such Counties being in the Blanco Independent School District, and the assessments made by such officers, and to procure injunctive relief to assure this result.

The defendants below, appellees here, filed a plea to the jurisdiction of the Court. A hearing was held on appellants' petition for a temporary injunction and on appellees' plea to the jurisdiction of the Court, following which the trial court entered judgment denying injunctive relief, sustaining the plea to the jurisdiction and decreeing that appellants take nothing by their suit.

Blanco Independent School District is a County line district located partly in Blanco, Hays and Kendall Counties. Prior to January 1, 1964, taxpayers in the District rendered their property and paid their taxes to the County Assessors-Collectors in Blanco and Hays Counties and to its own assessor-collector in Kendall County.

On September 9, 1963, the Board of Trustees of the District adopted a resolution finding it advisable that the taxes of the District be assessed and collected by an assessor-collector for the District and providing for the appointment of an assessor-collector and a Board of Equalization for the rendering, assessing and equalizing of the values of property for taxation and for the collection of taxes in the District.[1] We quote the following from such resolution:

"1. Each person,. partnership and corporation owning property within the limits of said School District shall, between January first and April first of each year, render to the tax assessor-collector of such district a full and complete sworn inventory of the property owned, possessed or controlled by him, her or them, within the limits of said school district on the first day of January of the current year.

"2. The tax assessor-collector of the school district shall, on the first Monday in April, or as soon thereafter as practicable, ascertain what property situated within the limits of the school district has not been rendered for taxation and he shall assess same at what he believes to be the true value thereof. The tax assessor-collector shall make up a list of all properties rendered to him or assessed by him together with the valuations rendered or assessed and shall submit same to the Board of Equalization on the second Monday in April, or as soon thereafter as may be practicable, for its inspection, approval, correction and equalization, and said Board of Equalization shall examine said list and appraise, correct and equalize said lists of property. * * *

"5. The tax assessor-collector shall bring before the Board of Equalization all the assessment lists or books and the Board of Equalization shall equalize as nearly as possible all property within the limits of the school district, lowering the value of property if they are satisfied it is too high, and if too low they shall raise the value of the property to a proper figure. Such Board shall also have the power to correct any errors appearing on the assessment lists or books.

"6. In all cases where the Board of Equalization shall raise the value of any property on the assessment lists or books they shall, after having examined such lists or books and corrected all errors appearing therein, adjourn to a day not less than ten (10) nor more than fifteen (15) days from the date of adjournment, such day to be fixed in. the order of adjournment, and shall cause the secretary to give written notice by mail to the owner of such property or the person rendering the same of the time to which said Board has adjourned and that such owner or person rendering the property may at that time appear and show cause why the value of such property should not be raised. The Board may also require the Secretary to have such notice published in a newspaper of general circulation in the school district. * * *

"12. All statutes of the State of Texas pertaining to the levying, assessment and collection of ad valorem taxes, penalties, interest and costs, applicable to or available to the school district, are hereby specifically adopted and made a part of this order insofar as they relate to the school district and are applicable."[2]

On September 12, 1963, the Board of Trustees notified the assessor-collector of taxes in Hays and Blanco Counties that effective the end of the current year the District would assess and collect its own

1. See Art. 2791, Vernon's Ann.Civ.St.

2. See Art. 1060a, V.A.C.S.

taxes and expressing thanks for past courtesies.

The Board of Trustees attempted to employ an assessor-collector of taxes but was unsuccessful in finding one who would act until Mrs. Joy Brussel was appointed on May 25, 1964, and qualified on June 2, 1964.

During the entire period, January 1 to April 1, in which the taxpayers of the District were required to render their property for taxation there was no assessor-collector of the District to whom they could be rendered although Art. 7202, V.T.C.S., gives the Board of Equalization the authority to remedy this situation. Appellants made no renditions except as some were made to the County assessors-collectors.

Mrs. Brussel, who qualified as assessor-collector for the District on June 22, 1964, testified that she made no attempt to procure renditions from taxpayers in the District after she assumed office and that she had been furnished no forms for that purpose by the Board of Trustees. No renditions for 1964 were made to her by any taxpayer after she took office.

On November 1, 1963, the Board of Trustees had employed, by contract, W. W. Hall Associates to evaluate all the property, real or personal, within the District for the purpose of "equalizing the values of such property for taxation."

Under this Contract, Mr. Hall evaluated the real property in the District and some of the personal property and prepared cards for each taxpayer reflecting the fair cash market values of the properties as appraised by him. These cards were delivered to Mrs. Brussel in May 1964. She took these cards and calculated 25% of the values placed thereon by Mr. Hall and this amount was fixed by her as the assessed value of the property for tax purposes. She was instructed in this regard by the Board of Equalization which had been appointed by the Board of Trustees in November 1963.[3] Following this procedure, Mrs. Brussel sent each taxpayer a notice of the assessed value of his real property in which it was stated that if in the opinion of the taxpayer the value was excessive he should inform her before June 19, 1964, that a hearing before the Board of Equalization was desired. None of appellants so informed her.

With respect to personal property, it appears that the tax records of Blanco County were used for this purpose by Mr. Hall for the District, and that no inquiries were made regarding the inventory or value of such property except as to taxpayers who appeared before the Board of Equalization. The records so used were not signed by the taxpayers, and no notice was given them by the Assessor for the District or by the Board of Equalization that such personal property had been assessed for taxation.

These appellants, either in person or by attorneys, appeared before the Board of Equalization on June 23, 1964. Their purpose in that appearance seems to have been, not to establish that the assessed values of their properties were excessive, but that the tax procedures had been irregular and that the assessments were invalid. The relief that they sought from the Board of Equalization was that it accept the renditions and valuations which they had made to the Counties as the renditions and valuations for the District for the year 1964. The valuations in these renditions were substantially less than the assessed valuations. The Board of Equalization refused to grant this request and appellants departed.

Members of the Board of Equalization testified and each stated that the Board had not adjourned, was in recess and that it would entertain any complaint which any appellant might wish to bring before

3. Five members were appointed to this Board although Art. 1048, V.A.C.S., provides for a Board of three members.

it regarding the assessed value of his property.

Art. 7145, V.T.C.S., provides, "All property, real, personal or mixed, except such as may be hereinafter expressly exempted, is subject to taxation, and the same shall be rendered and listed as herein prescribed."

All property shall be listed (rendered) for taxation between January 1st and April 30th when required. Arts. 7151, 7168, 7169 and 7189, V.T.C.S., Humble Oil and Ref. Co. v. State, 3 S.W.2d 559, Waco Tex. C.C.A., writ ref.

The rendition or listing shall be made to the assessor of taxes of the taxing unit. Arts. 7185 and 7189, V.T.C.S.

If the tax assessor is satisfied with the valuation as rendered in said list, he shall so enter the same; if he is not satisfied with the valuation, he shall refer the same to the Board of Equalization of the County for its action, and shall immediately notify the person from whom he received said list that he has referred said valuation to the Board of Equalization. Art. 7185. However, Art. 7211, V.T.C.S. provides, in part, " * * * if the assessor is satisfied that the value is below the reasonable cash market value of such property, he shall at once place on said rendition opposite each piece of property so rendered an amount equal to the reasonable cash market value of such property at the time of its rendition, and if such property shall be found to have no market value by such officer, then at such sum as said officer shall deem the real or intrinsic value of the property; and if the person listing such property or the owner thereof is not satisfied with the value placed on the property by the assessor, he shall so notify the assessor, and if desiring so to do make oath before the assessor that the valuation so fixed by said officer on said property is excessive; such officer to furnish such rendition, together with his valuation thereon and the oath of such person, firm or officer of any corporation, if any such oath has been made, to the commissioners' court

of the county in which said rendition was made, * * *."

In Cook v. Galveston, H. & S. A. Ry. Co., 5 Tex.Civ.App. 644, 24 S.W. 544, San Antonio C.C.A., no writ history, it is stated:

"Before a tax can become a charge upon property, it is necessary that a list of taxables should be made by the officer to whom by law that duty is intrusted. Cooley, Tax'n, 351. The officer upon whom such duty is imposed by the laws of this state is the assessor of taxes, who is required to take a list of taxable property in his county and assess the value thereof in the manner specified by law. * * * The rendition of property for taxes by its owner, and the listing of it by the assessor, in compliance with the law, are provisions made for the benefit and protection of the individual taxpayer; and they must be complied with in order to create a lawful demand upon the citizen for his property, for it is only by means of the requirement of official action that he can be protected against arbitrary and capricious action."

Of similar import is the following quotation from Sullivan v. Bitter, 51 Tex.Civ. App. 604, 113 S.W. 193, San Antonio, no writ history:

"The commissioners' court sitting as a board of equalization has no power under the law to assess property for taxes. The authority to assess property, save in exceptional cases, is vested in the assessor of taxes of the several counties of the state, and the method of making such assessments is plainly pointed out by statute. See title 104, c. 3, Rev.St. 1895. 'An assessment of necessity involves at least two things, to wit, a listing of the property to be taxed in some form, and an estimation of the sums which are to be a guide in the apportionment of the tax.' Cooley on Taxation (4th Ed.) 596. An assessment by the prop-

erly constituted authority is absolutely essential to support a tax. * * * In the absence of a statute authorizing it, a board of equalization cannot assess property not listed and valued by the assessor. Cooley on Taxation, 776, 777. In this state such board 'has no power to add to the rolls property not previously assessed or to take from them property which they embrace.' "

Fully supporting these views is Republic Ins. Co. v. Highland Park Ind. School Dist., 57 S.W.2d 627, El Paso Tex.C.C.A., writ ref.—Dismissed.

Applying the statutes above cited and the principles thus enunciated to the undisputed facts of this case we hold:

■ (1) The renditions made by appellants to the assessor-collector of Blanco, Hays and Kendall Counties are ineffective as renditions to the District for the reason that such assessor-collectors were without any authority to receive them for the District. The assessor-collector for Blanco County was the sheriff, John Stevenson. He did not attempt or purport to act as the assessor-collector for the District after being notified by the District in September, 1963, that it would assess and collect its own taxes.

■ (2) The assessments made by the assessor-collector for the District, Mrs. Brussel, are invalid for the reason that appellants have, without fault on their part, been deprived of a statutory and valuable right in not having been afforded the opportunity to render their property to the assessor-collector for the District, and they were also deprived of the right to have the independent judgment of such assessor exercised in respect to such renditions.

■ (3) The Board of Equalization for the District should consist of three members only.

■ (4) Appellants are entitled to injunctive relief against the enforcement of the invalid assessments made by the assessor and their consideration by the Board of Equalization. See City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414.

■ (5) The Contract made by the District with W. W. Hall Associates is a valid Contract. Pritchard & Abbott v. Patrick H. McKenna, 162 Tex. 617, 350 S.W.2d 333. We quote from that opinion, "Each of the various elected officials, including the Assessor-Collector, has the sphere that is delegated to him by law and within which the the Commissioners Court may not interfere or usurp. But that is not to say that the functions of the Board of Equalization and those of the Assessor-Collector are so diverse that information may not be lawfully contracted for and obtained by the Equalization Board because it may likewise be of aid to the Assessor in the performance of his duties. It is the duty of the Assessor as well to determine the value of all taxable property in the county."

We emphasize that such private appraisal is to be used by the assessor and the Board of Equalization as an aid in the performance of their statutory duties and not as a delegation of such duties nor as a substitute for them.

■ We reverse the judgment of the trial court and remand this case with the following instructions:

(1) Overrule appellees' plea to the jurisdiction.

(2) Grant appellants a temporary injunction enjoining the Board of Equalization of the District from equalizing the assessments presented to it for inspection by the assessor herein as to appellants and from using such assessments in any manner and enjoining the District from collecting or attempting to collect any taxes from appellants herein for the year 1964, except as they may be voluntarily paid to it, until the properties of appellants subject to taxes are assessed according to law, upon the giving of proper security.

(3) Grant appellants a permanent injunction upon final hearing perpetuating the temporary injunction if the basic facts are substantially as they appear in this record.

This judgment shall be without prejudice to the right of the District to again assess and value the property of appellants in accordance with law and to collect such taxes as may be due thereon. Republic Ins. Co. v. Highland Park Ind. Sch. Dist., 141 Tex. 224, 171 S.W.2d 342, Art. 7346, V.T.C.S.

Since it is obvious that the time prescribed by law for appellants to render their property to the assessor of the District and for such assessor to prepare his lists is long passed, it will be incumbent upon appellants to make such renditions within a reasonable time and the assessor should fix a reasonable time therefor. The other steps will follow as reasonably and expeditiously as possible, including a reasonable time within which appellants may pay the taxes lawfully due by them after the Board of Equalization has completed its duties in the premises (See Arts. 7206 and 7219, V.T.C.S.,) without the payment of penalties and interest.

■ We have heretofore issued an injunction in this case to protect our appellate jurisdiction.[4] This injunction will expire when our appellate jurisdiction expires. This will be when the Supreme Court grants a writ of error herein, if it does, or when our judgment herein becomes final.

Reversed and remanded with instructions.

### ON APPELLEES' MOTION
### FOR REHEARING

■ Prior to our decision in this case, we overruled appellees' motion to dismiss this appeal. The motion was based on the contention that this was an appeal from an interlocutory order and was controlled by Rule 385, Texas Rules of Civil Procedure and Art. 4662, V.T.C.S. If the order or judgment from which this appeal was taken was interlocutory, appellees' motion should be sustained because the record was not timely filed.

The judgment reads, in part, as follows:

"It is, therefore, ORDERED, ADJUDGED and DECREED by the Court that Defendants' Pleas to the Jurisdiction set out in Paragraphs AI, II, and IV of said Plea to the Jurisdiction be, and they are hereby, sustained.

"It is further ORDERED, ADJUDGED and DECREED by the Court that Plaintiff's Application for a Temporary Injunction be, and it is hereby, in all things denied, and that plaintiffs take nothing by their suit against the defendants.

"It is further ORDERED that all costs of suit in this behalf expended be, and they are hereby, taxed against the plaintiffs. for which let execution issue."

It is our opinion that this is a final judgment and appealable as such.

Appellees assert that we erred in not giving controlling effect to Art. 7193, V.T. C.S., which provides:

"Art. 7193. [7551] [5107] Duty in such cases

"In all cases of failure to obtain a statement of real and personal property from any cause, the assessor of taxes shall ascertain the amount and value of such property and assess the same as he believes to be the true and full value thereof; and such assessment shall be as valid and binding as if such property had been rendered by the proper owner thereof."

Since there was no tax assessor to fail "to obtain a statement of real and personal

property from any cause" from taxpayers within the time prescribed, it is our opinion that this statute is not applicable.

The motion is overruled.

Motion overruled.