## COUNTY OF GALVESTON v. W. I. DUCIE.

### No. 662.—Decided May 9, 1898.

**1. Commissioners Court—Employment of County Physician.**
The Commissioners Court has authority to employ a County Physician for two years at a stated salary per month to render medical attention to paupers, idiots, lunatics and prisoners; (Rev. Stats., art. 1537, subdiv. 9; Code Crim. Proc., art. 1094.) but iss not authorized to so contract for his services at inquests. (P. 669.)

**2. County Physician—Inquests—Ultra Vires Contract.**
Though such contract, so far as it provided for the services of the County Physician at inquests, was ultra vires, that did not render the contract invalid for that part which the county had power to contract for. (P. 669, 670.)

**3. Contract—County Physician—Discharge.**
Having made such contract with a County Physician the county had no right to discharge him without cause. (P. 670.)

**4. Contract for Services—Discharge—Damages.**
The rule as to damages recoverable by an employe wrongfully discharged which requires the sum he has made or could have made in other employment to be deducted from the agreed compensation, was not applicable to the case of an employment which did not occupy all the time of the employe, such as that of a County Physician which could be discharged concurrently with his general practice. (P. 670.)

**5. Same—Measure of Damages.**
The damage recoverable for such wrongful discharge was the salary for the period,—so far as the contract was lawful,—less any amount the physician could make in his general practice after discharge above what he could so make while continuing to serve the county. (P. 670.)

QUESTIONS CERTIFIED from Court of Civil Appeals for First District, in an appeal from Galveston County.

*Lovejoy, Sampson & Malevinsky* and *J. B. & C. J. Stubbs,* for appellant.—The acts of the County Commissioners Court in electing W. I. Ducie as County Physician, and as a predicate upon which the appellee based his cause of action, were ultra vires and void, and not binding on the county, and the County Commissioners Court could only bind the county to pay a County Physician a salary during the existence of a state of quarantine. The County Commissioners Court of Galveston County have no powers other than those delegated by law. The law provided that the County Commissioners should send all indigent sick to the regularly established public hospitals. Sayles' Rev. Stats, arts. 1514, 1520; Sayles' Rev. Stats., 1893, Supp., art. 4090, secs. 14, 15; Rev. Stats., 1895, arts. 1537, 1543, 4339; 4 Am. and Eng. Encycl., Law, 375, and note 2.

The court erred in overruling defendant's fifth special exception to the plaintiff's petition, which special exception is as follows: Defendant

specially excepts and demurs to plaintiff's petition for the reason that if the plaintiff was ever legally appointed County Physician, which defendant denies, then the defendant says that the plaintiff's petition shows that said position of County Physician was held by sufferance and at the pleasure of the Commissioners Court of Galveston County, Texas, for the reason that where the organic law does not specify the term for which the officer is to hold the office, it is held by sufferance and at the pleasure of the appointing power. Keenan v. Perry, 24 Texas, 254; Collingsworth County v. Meyers, 35 S. W. Rep., 414; Throop, Public Officers, secs. 304, 354, 361; Mechem, Public Officers, sec. 445; Ex parte Hennen, 13 Pet., 226; 19 Am. and Eng. Encycl., Law, 562.

A statute giving the power of removal, and providing that certain specified officers shall be removed only after notice and hearing, leaves those officers not specified subject to removal at pleasure. Sayles' Rev. Stats., title 66, ch. 2, pp. 165 to 167; People v. Simms, 73 N. Y., 440; People v. Emerick, 86 N. Y., 154.

Under the theory contended for by the plaintiff, that he had made an ordinary contract with the defendant, if he was discharged it was then his duty to seek other employment, and he having earned more after his discharge than the amount agreed to be paid him by the county, he was not entitled to recover. Porter v. Burkett, 65 Texas, 383; Simon v. Allen, 76 Texas, 398; U. S. v. Speed, 8 Wall., 77.

*S. S. Hanscom*, for appellee.—The appointment of appellee to attend to the duties imposed upon him under the contract was one of the agencies by which the Commissioners Court undertook to carry out the several provisions required of them by the law, and appellee is not to be treated in the light of an "officer" provided for by the Legislature, and was not a "County Physician" in the sense in which that term is used under the quarantine law, and it had been the custom of the county, as shown by the facts, to use such agency long prior to the enactment of the quarantine law. It is our contention therefore, that the employment is be treated like that of any other employment or function which the commissioners had the power to carry out, and that it had a right, in its discretion, to have the duties enumerated in the statement of the Honorable Court of Appeals performed by the employment of a physician, and to enter into a contract binding upon the county for a reasonable length of time and for a reasonable price, and in the absence of evidence of abuse of such discretion, such contracts will not be set aside.

Art. 1537, of our Revised Statutes, in broad and comprehensive terms makes it the duty of the commissioners to provide for the support of paupers and such idiots and lunatics as cannot be admitted into lunatic asylums, residents of the county, who are unable to support themselves.

Our Code of Criminal Procedure, art. 104a, authorizes justices of the peace in inquests to call in the county physician, and if there be no county physician some other physician, and the county to pay for mak-

ing autopsy not less than $10 nor more than $50. Under art. 3135 of our Revised Statutes it is made the duty of the commissioners to see that the jails are properly kept in a clean and healthy condition.

Under art. 1547 of our Revised Statutes, commissioners may cooperate with cities in sanitary regulations.

It is apparent to common sense, that in the multifarious exigencies that arise for the protection of the lives and health of the inhabitants of our State, and particularly in the coast counties, the Legislature never intended to bind down and restrict the commissioners in dealing with and carrying out the provisions of the statutes enumerated, but on the contrary a broad discretion was left to them. That the contract with appellee to perform the functions required of him at the price of $960 per year, in a county of the magnitude of Galveston, and subject to the conditions surrounding her, was a reasonable one, is too patent for argument.

The Commissioners Court, in the exercise of judicial powers, is a court of limited jurisdiction, but in providing for support of the poor, it is clothed with large powers and with large discretion in the exercise of those powers—it is the sole judge of the mode and measure of relief to be granted, and is not confined to the inmates of the county poor house. Henry v. Cohen, 66 Ala., 382.

The Legislature confers upon boards powers of a local, legislative and administrative character; when this is done by general words they acquire the right to pass all such necessary ordinances as may be covered by a fair intendment, and the presumption is in favor of their action. The Legislature may also authorize them to perform various discretionary and administrative acts. 4 Am. and Eng. Encycl., Law, 377; Barton County v. Wosler, 47 Mo., 189.

It has been said that these county boards have power to do whatever the political entity, the county, might do, if capable of rational action, except in matters the cognizance of which is exclusively vested in some other officer or person, and that in an enlarged sense they are the guardians of the county, having the management and control of its financial interests. 4 Am. and Eng. Encycl., Law, 379; State v. Farrier (N. J.), 1 Cent. Rep., 694.

And where specific compensation for services rendered is not fixed by law, may allow such amount as in their discretion seems just. 4 Am. and Eng. Encycl., Law, 380, 381, 383, 384, 388; People v. Kings County, 38 Hun., 373; Duncan v. Lawrence County, 101 Ind., 403; Hoffman v. Lake County, 96 Ind., 84; Smith v. County Comrs., 21 Kan., 669; Thayer v. McGee, 20 Mich., 195.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the First Supreme Judicial District has certified to this court the following statement and questions:

"The appellee, W. I. Ducie, brought suit to recover of the County of Galveston damages for the breach of a contract of employment as County

Physician. From a judgment in favor of the appellee the cause is pending on appeal in this court. The facts show that on December 24, 1894, appellee was a physician practicing medicine in Galveston County. On that date the Commissioners Court elected the appellee, Dr. W. I. Ducie, as County Physician for a term beginning January 1, 1895, and to last for the remainder of the two years. The action of the Commissioners Court was recorded in the minutes of their proceedings. The appellee made a written acceptance of the position in writing. There is no written evidence of employment except the appointment and acceptance. It had been the custom of the county authorities for at least thirty years to elect or appoint a county physician, but it does not appear that the physician was ever elected before for a definite term or a stated salary. It appeared from other evidence that the duties of County Physician under this appointment were to give medical attention to the prisoners at the jail, both the criminals and the pauper insane, and county paupers at the poor farm, and anyone sick within the jurisdiction of the county, confined as a prisoner, pauper or lunatic, and to attend inquests whenever anybody was found dead. These duties were to be performed for a stated salary of eighty dollars a month, and only such time as was necessary was to be given thereto. There is no evidence that there was a "regular established public hospital in the county." In the performance of his duties the appellee visited the jail once a day and the poor farm once a week, regularly, in addition to answering all calls to those places and attending inquests. The evidence did not show whether or not a County Physician had been appointed by the County Judge in accordance with the State quarantine law, or that appellee was to perform the duties prescribed for that officer.

"On July 2, 1895, the appellee was, without cause, removed by the Commissioners Court from the position of County Physician by an order of the court to that effect, and a successor was appointed. Appellee was paid his salary up to the time of his discharge. After the expiration of the two years he presented a claim to the Commissioners Court for the balance of his salary which was rejected by the court.

"Appellee could have performed the duties for the full time for which he was employed in addition to the practice actually done by him during that time, and was ready and willing to do so. He earned more than eighty dollars a month after his removal during the balance of the time. The relief from the necessity of doing the work was worth to him from $100 to $150. There were advantages connected with the position that made it worth more to him than the salary paid by the county. The court below charged the jury as follows:

" 'If you believe from the evidence that the county employed the professional services of the plaintiff, Dr. Ducie, from January, 1895, for two years, and that on the 2nd day of July, 1895, the defendant discharged the plaintiff from her services as physician, then the plaintiff, if he continued to practice medicine after his discharge, and earned much more than $80 per month, he would not be entitled to recover the

full price of $80 per month and monthly interest thereon for the time that he would have received said monthly payment if he had not been discharged, but you should make such reduction as you believe from the evidence was the value to Doctor Ducie of being relieved from attend-ing to the duties devolving on him in case he had not been discharged, so that he could thereafter devote all of his time to his profession with-out being encumbered with the duties and responsibilities resting on the County Physician.' "

"Upon the foregoing facts the following questions are certified for the decision of the Supreme Court:

"1.   Did the Commissioners Court have the authority to appoint the appellee County Physician at a stated salary per month to perform the duties indicated?

"2.   If it should be held that the court had the authority to employ the appellee to perform some of the duties stated, but not others, would the fact that the duties were combined and a stated amount agreed to be paid for all render the contract invalid?

"3.   Having appointed the appellee County Physician for the speci-fied term of two years, did the court have the power to revoke the ap-pointment before the expiration of that time?"

Subdivision 9 of article 1537, Revised Statutes, confers upon the Commissioners Courts of the several counties authority "to provide for the support of paupers, and such idiots and lunatics as cannot be ad-mitted into the asylum, residents of their counties, who are unable to support themselves."   Article 1094 of the Code of Criminal Procedure declares that "each county shall be liable for all the expenses incurred on account of the safe-keeping of prisoners confined in their respective jails or kept under guard," with certain exceptions not necessary to enumerate.   Counties are not liable for the services of medical men at inquests which may be held under the provisions of the Code of Crim-inal procedure.   Fears v. Nacogdoches County, 71 Texas, 337.

To the first question propounded we answer that the Commissioners Court of Galveston County was authorized to make the contract for medical services to be rendered to paupers and prisoners for whose care and support the county was required to provide.   Monghon & Sisson v. Van Zandt County, 3 Willson, C. C., sec. 198.   That court had not the authority to make the contract with Dr. Ducie for his services at in-quests and to that extent the contract made was not binding upon the county.

To the second question we reply that the stipulation in the contract for the services of Dr. Ducie at the inquests was ultra vires, but did not render the agreement invalid for that part which the county had the power to contract for.   Northside Railway Co. v. Worthington, 88 Texas, 562.   In the case just cited two corporations issued bonds jointly for debts separately due from each, and this court held that neither cor-portion could bind itself for the debt of the other, but that each was bound for that part for which it had the right to contract, and said:

"Although the bonds, as we think, are not binding upon either company for so much of their amount as was properly chargeable in the first instance upon the other, it does not follow that they are void as a whole. There is no fraud in the transaction. A fair equivalent was given for the obligations. They were executed under mistaken idea, that, by reason of the benefits which would accrue to each corporation from the concurrent prosecution of the two enterprises, each had the power to extend its credit in aid of the other. The companies bind themselves jointly and severally, and no reason is seen why each shall not be liable for so much of the indebtedness as it could legally have bound itself to pay."

To the third question we reply, that, so far as the Commissioners Court had authority to make the contract with Dr. Ducie, the county was bound to the same extent an individual would have been, and it had no right to discharge him without cause.

The County of Galveston was not bound to pay Dr. Ducie for attending inquests, and so much of the agreed price as represents that service should be deducted in ascertaining the amount that appellee is entitled to recover. If the evidence shows that after he was discharged Dr. Ducie was able to earn in the practice of his profession a greater sum than he could have made if he had continued in the discharge of the duties imposed by the contract, then that sum should also be deducted from the agreed price in determining the amount for which the county is liable. To illustrate this proposition, we will assume that $80 per month would be a fair price for all of the service agreed to be performed under the contract; that upon the basis of $80 per month for the entire service, attendance upon all inquests in the county would be reasonably worth $20 per month; and that by being relieved from the performance of the agreement Dr. Ducie was enabled to make in the practice of his profession $10 per month more than he could have earned if he had been required to discharge the duties of attending the prisoners, paupers, lunatics, etc., according to the contract. If we deduct the aggregate of these two amounts, that is, $30 per month, from the agreed price there will remain the sum of $50 per month for which the county would be legally liable under the contract. Under the facts stated and the contract submitted, Dr. Ducie is entitled to recover from Galveston County, for each month from the time of his discharge until the expiration of the term for which he was employed, the balance of $80 per month after deducting the sums above indicated.

The requirement that the discharged employe shall seek other employment and that the sum which he has made or could have made by engaging in such other employment must be deducted from the price at which he was engaged, does not apply in this case. The services which Dr. Ducie was employed to render did not purport to occupy all of his time, but were of a character consistent with the pursuit of his profession and were expected to be discharged concurrently with his regular practice. Therefore he could not seek other employment con-

sistently with his regular business, as it does not appear that there was any other business of like character in which he could have obtained employment. The rule, therefore, that under such circumstances the employe is entitled to recover the contract price as representing the loss sustained by him on account of the breach of his contract applies with full force in this case.