OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



October 22, 1999

Ms. Raymie Kana  
Colorado County Auditor  
400 Spring Street, Third Floor  
Columbus, Texas 78934

Opinion No. JC-0131

Re: Authority of a county official to close county office for all or part of a day, and related questions (RQ-0068-JC)

Dear Ms. Kana:

You ask whether an elected or appointed county official has the authority to close the official's office for part or all of one or more days on account of bad weather, repairs, and the like. You also ask whether county employees in that official's office may be paid for the time they did not work because of an office closure, or whether they must charge the time to available vacation or compensatory time. Finally, you ask whether the county treasurer or county auditor may withhold approval or payment of an employee's salary where the employee's time sheet indicates that the employee worked, but where the treasurer or auditor strongly suspects or knows that the employee did not work because of an office closure.

The authority of a county officer is limited to those powers expressly conferred by statute or constitution or necessarily implied therefrom. *Crosthwait v. State*, 138 S.W.2d 1060, 1061 (Tex. 1940). Your first two questions require us to determine whether county officers have the express or necessarily implied authority to close their offices and to authorize employees to receive regular pay for the time they did not work because of the closure.

Section 152.011 of the Local Government Code requires a county commissioners court, with certain exceptions, to "set the amount of the compensation, office and travel expenses, and all other allowances for county and precinct officers and employees who are paid wholly from county funds." TEX. LOC. GOV'T CODE ANN. § 152.011 (Vernon 1999); *see id.* § 152.017 (providing that section 152.011 does not apply to county auditor, district attorney's office, certain judges, and others). This office has construed section 152.011 broadly to find that a commissioners court has the authority to confer employment benefits upon county officers and employees, including longevity pay, vacation leave, sick leave, and paid holidays. *See, e.g.*, Tex. Att'y Gen. Op. Nos. JM-910 (1988) at 4 (vacation and sick leave); MW-438 (1982) at 2 (paid holidays); Tex. Att'y Gen. LO-96-007, at 2 (longevity pay).

However, the authority of a commissioners court to set county compensation does not include the authority to set the office hours of other county officials and their employees. Several laws with

limited application allow a commissioners court to set the office hours of county employees. For example, in a county with a population of 355,000 or more, the commissioners court is expressly authorized by statute to "adopt and enforce uniform rules on the *hours of work* of department heads, assistants, deputies, and other employees whose compensation is set or approved by the court." TEX. LOC. GOV'T CODE ANN. § 157.021(a) (Vernon 1999) (emphasis added); *see also id.* § 158.035(a) (adoption of working conditions in civil service counties). But no such specific statute applies to Colorado County, and no state law of general application dictates the office hours to be observed by county officials and their employees or allows the commissioners court to establish the hours for all county offices.

In the absence of such a law this office has concluded that each county official has the implied authority to set the working conditions for his or her own employees, and as a general rule, neither the commissioners court nor other officers may set working conditions for other offices. *See* Tex. Att'y Gen. Op. Nos. JM-1099 (1989) at 4 ("The powers of county officers, including the county sheriff, over personnel matters is also quite extensive, subject to appropriate constitutional and statutory restraints."); JM-521 (1986) at 3 (commissioners court may not set the working conditions of other county officials).

Thus, opinions of this office have said that a commissioners court has no authority to set the office hours of district and county clerks, *see* Tex. Att'y Gen. LO-94-082 at 2; to set the office hours of the county auditor, *see* Tex. Att'y Gen. Op. No. JM-440 (1986) at 2; to order offices of elected county officials to be open at lunch, *see* Tex. Att'y Gen. Op. No. JM-182 (1984) at 3; or to set the office hours of justices of the peace, *see* Tex. Att'y Gen. Op. No. M-1197 (1972) at 1-2. Other opinions have said that a constitutional county office may close on Saturday without consent of commissioners court, *see* Tex. Att'y Gen. Op. No. C-350 (1964) at 2, and that a county auditor may not make a deduction from a county officer's salary for failing to keep his office open on Saturday, *see* Tex. Att'y Gen. Op. No. O-6679 (1945) at 2.

In our view, the opinions prohibiting a commissioners court from setting all county office hours remain correct. County commissioners, like other county officers, have only the powers expressly conferred by the Texas Constitution or statutes or necessarily implied therefrom. *See Canales v. Laughlin,* 214 S.W.2d 451, 453 (Tex. 1948); *Abbott v. Pollock,* 946 S.W.2d 513, 517 (Tex. App.–Austin 1997, writ denied). Neither the commissioners court nor any county officers may interfere with or usurp the duties or performance of independent county officials and their employees. *Pritchard & Abbott v. McKenna,* 350 S.W.2d 333, 335 (Tex. 1961); *Abbott,* 946 S.W.2d at 517. No law applicable to Colorado County establishes who may set county office hours generally. In such case, each county officer has the implied authority to set the hours of his or her own office, subject to the requirement that the hours enable the office to perform its constitutional and statutory duties. *See* Tex. Att'y Gen. Op. No. JM-1099 (1989) at 4. Accordingly, we conclude that in the absence of an applicable law to the contrary, an elected or appointed county official has the authority to close the official's office for part or all of one or more days on account of bad weather, repairs, and the like.

We also conclude that the power of a county officer to close his or her office includes the power to authorize employees to be paid for the time they were unable to work because of an office closure. In Attorney General Letter Opinion 94-082 this office considered whether a commissioners court could reduce the pay of district and county clerk employees where the clerk's office shortened its work day. *See* Tex. Att'y Gen. LO-94-082, at 1. The office was previously open on weekdays from 8 a.m. to 5 p.m., then changed to 8:30 a.m. to 4:30 p.m. with no closure for lunch hour. *See id.* The opinion concludes that the commissioners court could not set the hours that the clerk's office must be open and could not reduce the salaries of the clerk and the clerk's deputies except in accordance with the regular statutory budget procedure. *See id.* at 2.

Similarly, in Attorney General Opinion O-6679 a county auditor asked whether he could make deductions from a county officer's salary if the officer refused to open his or her office on Saturdays. *See* Tex. Att'y Gen. Op. No. O-6679 (1945) at 1. In that case, the commissioners court had ordered a six-day work week for county offices. *See id.* Finding no law that required county offices to be open to the public a certain amount of time, other than a reasonable time, nor any law that authorized the commissioners court to set county office hours, the opinion concludes: "The County Auditor has only such powers and duties as are conferred upon him by the laws of this State and we know of no provision which gives the County Auditor the power or duty to deduct from the salary check (an incident to the office) of a county officer any amount for the reason that said officer failed to keep his office open to the public six 8-hour days (or 48 hours) per week." *Id.* at 2.

Thus, once the salaries of county officers and employees are set, the salaries may not be reduced, outside of the regular budget adoption and amendment process, to account for office closures. Accordingly, we conclude that if a county officer closes his or her office for a period that is normally a part of a regular work period for the types of reasons about which you ask—bad weather, repairs, and the like—the officer and the office's employees may be paid for that time, and neither the commissioners court nor the county treasurer nor the county auditor may reduce the officers' or employees' pay or require that the time be charged to leave time.

Finally, we consider whether a county treasurer or county auditor may withhold approval or payment of an employee's salary for time the treasurer or auditor strongly suspects or knows that the employee did not work because of an officer-approved office closure. We conclude that neither a county treasurer nor a county auditor may do so.

Both the treasurer and the auditor are part of the checks and balances of a county's fiscal administration and are charged in some way with ensuring the proper and legal expenditure of public funds. The Texas Constitution establishes the office of the county treasurer, but gives the Legislature the responsibility to prescribe the treasurer's duties. *See* TEX. CONST. art. XVI, § 44(a). The county treasurer is the chief custodian of county funds and disburses all money belonging to the county. TEX. LOC. GOV'T CODE ANN. §§ 113.001, .041(a) (Vernon 1999). Money may be withdrawn from the county treasury only upon a check or warrant drawn on the treasury by an official authorized to do so. *Id.* § 113.041(b), (c).

The treasurer is under a ministerial duty to pay a check presented to the treasurer that complies with the procedural requirements set out by statute, *unless* the treasurer doubts the legality or propriety of the check. "If the treasurer doubts the legality or propriety of an order, decree, certificate, or warrant presented to the treasurer for payment, the treasurer may not make the payment." *Id.* § 113.041(d). Instead, the treasurer must decline to pay the check and report the matter to the commissioners court for instructions. *Id.* Thus, courts and this office have said that while a treasurer's duty to pay a warrant is ministerial when the statutory requirements for payment have been met, the treasurer has discretion to deny payment if the treasurer doubts the validity of the payment. *See McDonald v. Farmer*, 56 S.W. 555, 556-57 (Tex Civ. App.–Galveston 1900, no writ); *Walker v. Barnard*, 27 S.W. 726, 727-28 (Tex Civ. App.–San Antonio 1894, writ ref'd); Tex. Att'y Gen. Op. Nos. H-1148 (1978) at 1; H-171 (1973) at 4-5; WW-430 (1958) at 5.

The duties of the county auditor similarly are ministerial under some circumstances and discretionary under others. The county auditor has general oversight authority over the books and records of county offices and is charged with the "strict enforcement of the law governing county finances." TEX. LOC. GOV'T CODE ANN. § 112.006 (Vernon 1999). Except for a check for jury service, "the county treasurer and the county depository may not pay a check or warrant unless it is countersigned by the county auditor to validate it as a proper and budgeted item of expenditure." *Id.* § 113.043. Courts and this office have recognized the case of *Smith v. McCoy*, 533 S.W.2d 457 (Tex. Civ. App.–Dallas 1976, writ dism'd w.o.j.), as setting out the prevailing approach to the question of an auditor's duty to countersign a salary warrant. *See, e.g., Crider v. Cox*, 960 S.W.2d 703, 706 (Tex. App.–Tyler 1997, writ denied); *Commissioners Court of Harris County v. Fullerton*, 596 S.W.2d 572, 579 (Tex. Civ. App.–Houston [1st Dist.] 1980, writ ref'd n.r.e.); Tex. Att'y Gen. Op. No. JM-1186 (1990) at 3; Tex. Att'y Gen. LO-98-103, at 2 n.4; LO-93-91, at 4-5.

In *Smith v. McCoy* the court considered whether a county auditor could withhold approval of back pay to deputy sheriffs who were reinstated following suspension. *Smith*, 533 S.W.2d at 458. The auditor was presented with a "difficult legal question," the court said, as to whether the deputies were entitled to back pay. *Id.* at 459. The court held that because the auditor is charged with the "[s]trict enforcement of the law governing county finances," the auditor's duty to countersign checks is discretionary, unless right to the payment is established as a matter of law. *Id.* "Evidence that appellees were suspended from their jobs and subsequently reinstated does not establish as a matter of law that they were entitled to compensation for the period of their suspension." *Id.* at 460. The auditor's ability to disapprove doubtful payments, the court said, is part of the statutory system of checks and balances that exists for the purpose of protecting county funds. *Id.* at 459. Where an individual's right to a salary is established as a matter of law, however, the auditor is under a ministerial duty to approve the payment. *Id.* at 460. In Attorney General Opinion JM-192 we explained:

> [I]f the county employee, as a matter of right, is entitled to be paid a
> sum certain, the county auditor has a ministerial duty to co-sign the
> warrant and may be subject to a writ of mandamus to do so; however,
> if the auditor has reasonable grounds on which to question the salary

> payments, he may, in his discretion, refuse to co-sign the warrant, in
> which event the employee's remedy is a suit against the county rather
> than a mandamus action against the auditor.

Tex. Att'y Gen. Op. No. JM-192 (1984) at 2.

Accordingly, in *Jackson v. Leonard*, 578 S.W.2d 879 (Tex. Civ. App.–Houston [14th Dist.] 1979, writ ref'd n.r.e.), the court held that the county auditor had a ministerial duty to approve the payment of salary increases of justices of the peace where the increases had been awarded pursuant to the statutory grievance procedure, even though the auditor suspected that the increases were really to pay for office space. *See Jackson,* 578 S.W.2d at 881. The salaries had been set in accordance with the statutory requirements, which did not include discretionary approval by the auditor. *See id.* "It follows therefore that the auditor is not empowered to go behind the action of the salary grievance committee and question the mental processes behind such action or the motives thereof." *Id.* Thus, the court held, the auditor had a ministerial duty to approve payment of the salaries. *See id.* at 882.

Similarly, Attorney General Opinion M-40 concludes that where the commissioners court approved a salary increase for certain elected officials, and where the increases were within the legal limits, "the function of the county auditor in approving the payment of such salaries and in signing salary warrants is ministerial only." Tex. Att'y Gen. Op. No. M-40 (1967) at 6. And Attorney General Opinion JM-1186 concludes that while an auditor could require county constables to submit monthly documentation in support of their monthly requests for mileage reimbursement, "it is not generally within the province of the auditor to ensure that county officers and employees are complying with the duties of their office or employment imposed on them by law where such efforts *are not necessary to the accomplishment of the auditor's statutory duties.*" Tex. Att'y Gen. Op. No. JM-1186 (1990) at 4. *But see* Tex. Att'y Gen. Op. No. O-6624 (1945) at 2 (concluding that county auditor may refuse to countersign salary warrant if he believes that employee is not performing work).

Because an elected or appointed county official has the authority to close the official's office for part or all of one or more days on account of bad weather, repairs, and the like, and to authorize employees to be paid for the time they were unable to work, the duty of a county treasurer and county auditor to approve salary payments in the event of such a closure is ministerial, not discretionary. As we have said, the salaries of county officers and employees, with some exceptions, are set by the commissioners court. *See* TEX. LOC. GOV'T CODE ANN. § 152.011 (Vernon 1999). Neither the county treasurer nor the county auditor has the power to make deductions from salaries for the failure of a county officer to keep his or her office open for certain hours. *See* Tex. Att'y Gen. Op. No. O-6679 (1945) at 2. Thus, we conclude that neither the county treasurer nor the county auditor may withhold approval or payment of an employee's salary for time the treasurer or auditor suspects or knows that the employee did not work because of an officer-approved office closure.

## S U M M A R Y

An elected or appointed county official has the authority to close the official's office for part or all of one or more days on account of bad weather, repairs, and the like, and to authorize employees to be paid for the time they were unable to work because of an office closure. Neither the county auditor nor the county treasurer may withhold approval or payment of an employee's salary for time the treasurer or auditor strongly suspects or knows that the employee did not work because of such an office closure.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Barbara Griffin
Assistant Attorney General - Opinion Committee